1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   CTF DEVELOPMENT, INC.,                      No. C 09-02429 WHA
     a Delaware Corporation,
11
                    Plaintiff,                   **ORDER DENYING PLAINTIFF'S**
12                                               **MOTION TO DISMISS**
        v.                                       **DEFENDANT'S COUNTERCLAIM**
13                                               **AND GRANTING IN PART AND**
                                                 **DENYING IN PART PLAINTIFF'S**
14   PENTA HOSPITALITY, LLC., a                  **MOTION TO STRIKE AFFIRMATIVE**
     California Limited Liability Company,       **DEFENSES 2, 3, 4, 5, 7, 9, AND 11**
15                                               **AND VACATING HEARING**
                    Defendant.
16   _____/

17                              **INTRODUCTION**

18        In this trademark-infringement action, Plaintiff CTF Development, Inc., moves to dismiss

19   and strike the counterclaim and certain affirmative defenses of defendant Penta Hospitality, LLC

20   ("Hospitality").  For the reasons stated below, the motion to dismiss the counterclaim is **DENIED**,

21   and the motion to strike the affirmative defenses is **GRANTED IN PART** and **DENIED IN PART**.

22                               **STATEMENT**

23        Plaintiff CTF Development, Inc., is the United States affiliate of Penta Hotel Holdings,

24   Ltd., which has developed hotels, motels, and resorts in Germany and England under the PENTA

25   trademark.  CTF and its affiliates also operate hotels, motels, and resorts in the United States

26   under this mark.  On June 9, 2006, CTF filed a trademark application for PENTA with the

27   United States Patent and Trademark Office.  On November 18, 2008, as part of the trademark

28

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1   application process, CTF filed a statement of use detailing how the mark was used in commerce.[1]

2   In this statement, CTF claimed that it had used the PENTA mark since as early as September 23,

3   2008, "in commerce on or in connection with" the following services related to CTF's Ko'a Kea

4   Hotel in Hawaii (Dkt. No. 21, Exh. B):

5           Hotel services; making hotel reservations for others; provision of
            temporary accommodation; hotel, motel and resort hotel
6           accommodation services; providing of food and drink; restaurant,
            bar and catering services; provision of facilities for meetings,
7           conferences, exhibitions, congresses, seminars, symposiums and
            workshops; reservation services for hotel accommodation and
8           other accommodation; food and beverage preparation services.

9   Based, in part, on the contents of the statement of use, the USPTO officially registered the

10  PENTA mark to CTF on January 27, 2009.

11          On December 28, 2006, defendant Penta Hospitality, LLC, registered its domain name,

12  www.pentahospitality.com.  In January 2007, Hospitality started using the mark PENTA

13  HOSPITALITY in connection with hotel and real-estate investment, development, and

14  management.  At some point, CTF became aware of Hospitality's use of the PENTA mark, and

15  on November 10, 2008, CTF sent a letter notifying Hospitality of CTF's exclusive rights to the

16  PENTA mark.  Hospitality allegedly continues to use the mark.

17          This action commenced on June 2, 2009.  CTF sued Hospitality, LLC, alleging numerous

18  claims, including trademark infringement and violation of the Anticybersquatting Consumer

19  Protection Act, 15 U.S.C. 1125(d).

20          Two weeks before the complaint was filed, Hospitality filed a petition to cancel the mark

21  with the Trademark Trial and Appeal Board, asserting that CTF did not use the mark as

22  claimed and thereby made fraudulent representations on its statement of use to the USPTO.

23  _____

24          [1] For clarification purposes, the trademark registration process is as follows:  "[15 U.S.C.] 1051(b)
    allows an applicant who alleges a bona fide intent to use a mark to file an application seeking registration on the
25  Principal Register.  If, upon examination, the mark appears registrable, the [USPTO] publishes it for opposition.
    15 U.S.C. § 1062(a).  If no opposer is successful, the [USPTO] issues a notice of allowance.  *Id.* § 1063(b)(2).
26  The applicant then has six months in which to file a statement that verifies that the mark is in use in commerce,
    the date of first use in commerce, the goods and services in connection with the mark are used in commerce, and
27  the manner in which the mark is being used.  *Id.* § 1051(d)(1).  The statement of use is then subject to another
    examination, in which the [USPTO] considers how the mark is used and, if it is still satisfied that, as used, the
28  mark is registrable, issues a certificate of registration.  *Id.*"  *Eastman Kodak Co. v. Bell & Howell Document
    Management Products Co.*, 994 F.2d 1569, 1570 (Fed. Cir. 1993).

United States District Court

For the Northern District of California

1  Specifically, Hospitality asserted that even though CTF declared in its trademark application

2  that it intended to use the mark for meetings, conferences, exhibitions, congresses, seminars,

3  symposiums, and workshops, CTF's Ko'a Kea Hotel did not in fact provide facilities for such use.

4  CTF moved to suspend the TTAB proceedings pending final disposition of this civil action, and

5  the TTAB granted CTF's motion.  Hospitality then moved to stay this civil action until after the

6  TTAB had made a decision or, in the alternative, to dismiss CTF's cyberpiracy claim, both of

7  which were denied (Dkt. No. 23).

8      Hospitality filed an answer to the complaint (Dkt. No. 27).  In the answer, Hospitality

9  asserted a counterclaim against CTF alleging that CTF's registration regarding the PENTA mark

10  must be cancelled pursuant to 15 U.S.C. 1119 because CTF filed a fraudulent statement of use in

11  support of its registration application.  Hospitality also asserted sixteen affirmative defenses in

12  the answer.  CTF now moves to dismiss Hospitality's counterclaim and to strike Hospitality's

13  affirmative defenses 2, 3, 4, 5, 7, 9, and 11.

14                          **ANALYSIS**

15  **1.     MOTION TO DISMISS HOSPITALITY'S COUNTERCLAIM.**

16      A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure

17  12(b)(6) is evaluated under the same standard as a motion to dismiss the plaintiff's complaint.

18  Rule 12(b)(6) tests the legal sufficiency of the claims asserted and "must be read in conjunction

19  with Rule 8, which requires a short and plain statement showing that the pleader is entitled to

20  relief and contains a powerful presumption against rejecting pleadings for failure to state a

21  claim." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003) (quotation marks omitted).

22  These settled principles are qualified by the new, more stringent pleading standard articulated by

23  the Supreme Court in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009).

24      The counterclaim seeks cancellation of CTF's registration of the PENTA mark pursuant

25  to 15 U.S.C. 1119 on the basis of fraud.  Section 1119 gives the court the authority, *inter alia*,

26  to order the cancellation of trademark registrations.  Under 15 U.S.C. 1064(c), a party can seek

27  cancellation of a registered trademark on the basis of fraud by showing that the applicant or

28  registrant made:  (1) "a false representation;" (2) "regarding a material fact;" (3) with "knowledge

1  or belief that the representation is false;" (4) with "the intent to induce reliance upon the

2  misrepresentation;" (5) "reasonable reliance thereon;" and (6) "damages proximately resulting

3  from the reliance." *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990).  Moreover,

4  for all allegations of fraud, Federal Rule of Civil Procedure 9(b) requires that "a party must state

5  with particularity the circumstances constituting fraud," while "[m]alice, intent, knowledge, and

6  other conditions of a person's mind may be alleged generally."  "A pleading is sufficient under

7  Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an

8  adequate answer from the allegations.  While statements of the time, place and nature of the

9  alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient."

10  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citations omitted).

11        The six elements required to justify cancellation of a trademark registration on the basis

12  of fraud are now addressed in turn.

13                     **A.      A False Representation.**

14        The counterclaim alleges that CTF made various false representations in its statement of

15  use.  Specifically, the counterclaim states (Ans. 7–8):

16            [O]n June 9, 2006, CTF filed an application with the USPTO for
            the CTF Mark . . . for use with, "hotel services; making hotel
17            reservations for others; provision of temporary accommodation;
            hotel, motel and resort hotel accommodation services; providing of
18            food and drink; restaurant, bar and catering services; provision of
            facilities for meetings, conferences, exhibitions, congresses,
19            seminars, symposiums and workshops; reservation services for
            hotel accommodation and other accommodation; food and
20            beverage preparation services," in International Class 43.

21  But the counterclaim states that, contrary to CTF's representations, at the time that CTF filed its

22  statement of use the mark was *not* being used in conjunction with "all of CTF's Services,"

23  including "motel and accommodation services," "the provision of facilities for meetings,

24  conferences, exhibitions, congresses, seminars, symposiums and workshops," and "the providing

25  of food and drink; restaurant, bar and catering services and food and beverage preparation

26  services" (*id.* at 8–10).  Indeed, Hospitality states that, at that time, CTF's Ko'a Kea Hotel did

27  not even include "conference or meeting facilities," nor did the Ko'a Kea Hotel website include

28  the mark or "any reference to the provision of facilities for meetings, conferences, exhibitions,

United States District Court

For the Northern District of California

1    congresses, seminars, symposiums and workshops" (*id.* at 9).  Hospitality further claims that,

2    although CTF represented in its statement of use that "it began using the CTF Mark with all of

3    its CTF Services on September 23, 2008, that statement was false. . . . CTF did not then and still

4    does not use the CTF Mark in conjunction with all of the CTF Services" (*id.* at 9–10).

5         Plaintiff CTF does not challenge Hospitality's allegations that these statements were false.

6    Instead, CTF merely states that Hospitality has not sufficiently alleged materiality and intent to

7    deceive.  These elements are addressed below.  In sum, Hospitality has sufficiently alleged that

8    the representations were false.

9                           **B.    Regarding a Material Fact.**

10        Under its usual meaning, "[a] fact is 'material' if the fact may affect the outcome of the

11   case." *Far Out Productions, Inc., v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).  Likewise, "in the

12   trademark context, a material misrepresentation arises only if the registration should not have

13   issued if the truth were known to the examiner." *Alphaville Design, Inc. v. Knoll, Inc.*, 627 F.

14   Supp. 2d 1121, 1132 (N.D. Cal. 2009) (Patel, J.) (quotation marks omitted).  Misrepresentations

15   of fact made on the statement of use are, by their nature, "material" because "the statement of use

16   would not have been accepted nor would registration have issued but for [the applicant's]

17   misrepresentation, since the USPTO will not issue a registration covering goods upon which the

18   mark has not been used." *Medinol Ltd. v. Neuro Vasx, Inc.*, No. 92040535, 2003 T.T.A.B. LEXIS

19   227, at *11 (T.T.A.B. May 13, 2003); *see also Tri-Star Marketing, LLC, v. Nino Franco Spumanti*

20   *S.R.L.*, No. 92043953, 2007 T.T.A.B. LEXIS 81, at *8 (T.T.A.B. Aug. 28, 2007); *Universal*

21   *Nutrition Corp. v. Carbolite Foods, Inc.*, 325 F. Supp. 2d 526, 531 (D. N.J. 2004) (citing cases).[2]

22   The counterclaim alleges just that — that "CTF's false statements were material as they were

23   made with the intent to induce the USPTO to grant registration of the CTF Mark.  Reasonably

24   relying upon the truth of such false statements, the UPSTO did, in fact, grant registration of the

25   CTF Mark to CTF" (Ans. 10).

26

27        [2] Contrary to plaintiff (*see* Reply Br. 5), *Medinol* has not been reversed.  It is true that the portion of
     *Medinol* regarding the "intent" prong of a fraud claim was overturned in *In re Bose Corp.*, No. 2008-1448, 2009
28   U.S. App. LEXIS 19658, at *8–13  (Fed. Cir. Aug. 31, 2009).  But the portion of *Medinol* addressing the
     "materiality" prong of a fraud claim is still good law.

1    Plaintiff states that defendant has failed to allege that, had the USPTO known the truth,

2   the trademark would not have issued.  Instead, plaintiff argues, the USPTO would have taken

3   alternative action.  *First*, plaintiff cites *Ritz Hotel, Ltd. v. Shen Manufacturing Co., Inc.*,

4   No. 05-4730, 2009 WL 723394, at *3–4 (E.D. Pa. Mar. 17, 2009), to argue that "[t]he [US]PTO

5   would not have deleted the . . . registration had it known that some associated goods were not in

6   use at the time [plaintiff] filed its Statement of Use; the [US]PTO would have deleted the unused

7   goods without cancelling the registration."  But *Ritz Hotel* did not address a statement of use

8   filed in support of an application to *obtain* a trademark registration.  Rather, the facts involved a

9   statement of use filed to *renew* an already existing trademark registration and the court addressed

10   how the USPTO would respond when certain uses originally listed on the registration had since

11   been *abandoned*.  *Ibid.*  As a result, *Ritz Hotel* is inapplicable to the present case in which it is

12   alleged that the applicant *fabricated* certain uses in order to *obtain* the trademark registration.

13    *Second*, plaintiff cites Sections 1108 and 1110 of the Trademark Manual of Examining

14   Procedures for the proposition that, had it known the truth, the USPTO would have either simply

15   deleted the items on which the mark was not in use, divided the application into multiple

16   applications, or, alternatively, extended the deadline for the statement of use by six months.

17   But plaintiff's reasoning is flawed.  First, neither Section 1108 or 1110 speak to deleting items

18   on which the mark is not in use.  Moreover, both Sections require the prospective registrant to

19   file a separate application for division of the application or extension of time with the USPTO

20   within a certain time limit *and* pay a fee.  *See* §§ 1108–1108.02, 1110(a) and (d).  If these

21   requirements are not complied with, the USPTO will *deny* the request and "abandon" or deny

22   the application for registration.  *See*, *e.g.*, §§ 1108, 1110.01.  In this case, plaintiff neither applied

23   nor paid the fee for division of the application or the six month time extension, nor did so within

24   the time limit set forth in Section 1108 and 1110.  As a result, had the USPTO known that certain

25   items listed on the statement of use were not being used in conjunction with the mark, the USPTO

26   would not have simply unilaterally divided the application or unilaterally granted a time extension

27   to fix the problem.  Rather, the USPTO would have *denied* the registration application.

28

**United States District Court**
For the Northern District of California

*Finally*, plaintiff states that cancelling "a technically good trademark because of a minor technical defect in an affidavit" is inappropriate. *Morehouse Manufacturing Corp. v. J. Strickland & Co.*, 407 F.2d 881, 888 (C.C.P.A. 1968). But the technical defect at issue in *Morehouse* truly was "minor" (referring to one item actually used in commerce with two different names in an affidavit thereby causing mild confusion over the item's actual name). Attempting to deceive the USPTO by listing false uses of the trademark in the statement of use, as is alleged in this action, is not a "minor" defect.

In sum, Hospitality has stated facts to show that, had the USPTO known the truth about CTF's statement of use, the USPTO would have denied CTF's registration application. Thus, the materiality prong is sufficiently alleged.[3]

### C.    Knowledge or Belief that the Representation is False.

The third prong requires that the applicant or registrant knew that the material misrepresentation was false. Hospitality's counterclaim alleges that (Ans. 10):

> CTF falsely alleged in a Declaration under 37 C.F.R. § 1(a) that CTF's first use of the mark was on September 23, 2008, for the CTF Services. Upon information and belief, however, CTF did not then and still does not use the CTF Mark in conjunction with all of the CTF Services. Therefore, upon information and belief, CTF procured the registration for the CTF Mark by false means and/or by knowingly and willfully making false and/or fraudulent declarations or representations to the USPTO . . . CTF knew, at the time the statement was made, that the statement of first use made in the application for the CTF Mark was false.

These are not mere conclusory allegations; rather, defendant lists supporting facts to show that plaintiff *knew* the statements were false, thereby satisfying the *Iqbal* standard. Regardless, plaintiff does not dispute Hospitality's allegations that CTF *knowingly* made false representations. Plaintiff merely claims that the *intent* prong is not met. Therefore, the knowledge prong is sufficiently alleged.

---

[3] Plaintiff suggests that a decision finding that CTF's PENTA trademark is invalid would not change the legal position of the parties "with respect to CTF's registration related to hotel services, as CTF's trademark rights would have nonetheless dated back to the filing of its application upon issuance of the underlying registration" (Reply Br. 4). This argument presupposes that CTF had established a valid right to use the PENTA mark prior to the allegedly fraudulent trademark registration. Indeed, one goal of this action is to conclusively determine which products, if any, CTF has a valid and exclusive right to use. *Sengoku Works Ltd. v. RMC International, Ltd.*, 96 F.3d 1217, 1219–20 (9th Cir. 1996) (explaining that the presumption of exclusive right to use is rebuttable).

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

### D.     Intent to Induce Reliance Upon the Misrepresentation.

The Trademark Trial and Appeal Board has:

> [C]onsistently and correctly acknowledged that there is a material legal distinction between a "false" representation and a "fraudulent" one, the latter involving an *intent to deceive*, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like.  In other words, deception must be *willful* to constitute fraud.

*In re Bose*, 2009 U.S. App. LEXIS 19658, at *6 (citations and quotation marks omitted) (emphasis added).

Defendant Hospitality alleges that CTF's false statements "were made with the intent to induce the USPTO to grant registration of the CTF Mark" (Ans. 10).  Plaintiff responds that this is a mere conclusory allegation and that Hospitality has not sufficiently alleged facts to show that CTF intended to deceive the USPTO (Br. 4–6).  But defendant has alleged facts which establish a *plausible inference* of such a deceptive intent.  Such an inference is sufficient:

> [B]ecause direct evidence of deceptive intent is rarely available, such intent can be inferred from indirect and circumstantial evidence.  But such evidence must still be clear and convincing, and inferences drawn from lesser evidence cannot satisfy the deceptive intent requirement.  When drawing an inference of intent, the involved conduct, viewed in light of all the evidence . . . must indicate sufficient culpability to require a finding of intent to deceive.

*In re Bose*, 2009 U.S. App. LEXIS 19658, at *10–11 (citations and quotation marks omitted).  Under the facts alleged, the inference of intent is easily drawn.  When false facts are affirmatively written on a statement of use, it is difficult to conclude that it is not at least *plausible*, under the *Iqbal* standard, that such an act was done with the intent to deceive the UPSTO into granting a trademark registration.  Why else would such an act occur?  Plaintiff has not suggested an alternative reason.

Plaintiff incorrectly claims that the intent prong of a fraud claim must be alleged with the particularity required by Rule 9(b) (Br. 5).  To the contrary, Rule 9(b) specifically states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

As stated, this order holds that Hospitality has alleged sufficient facts to meet the applicable

standard under *Iqbal*.[4]

Finally, plaintiff cites several decisions to support the proposition that there must be

subjective intent to deceive, rather than evidence of mere negligence in failing to disclose certain

evidence (Br. 4, 6). This order does not dispute plaintiff's proposition. But plaintiff wrongly

assumes that Hospitality has only alleged facts that show mere negligence. By way of example,

the cases cited by plaintiff address situations where certain facts were accidentally *omitted* from

a statement of use — a circumstance of arguable negligence in which an inference of an intent to

deceive does not naturally follow. In contrast, when allegedly false facts are *affirmatively added*

to the statement of use, this order cannot say that an intent to deceive the USPTO is not a

plausible inference. As that is all that is required to survive a motion to dismiss, the intent prong

is sufficiently alleged.

### E.   Reasonable Reliance Upon the Misrepresentation And Damages Proximately Resulting Therefrom.

Plaintiff does not dispute the final two prongs of the fraud counterclaim — reasonable

reliance on the misrepresentation and damages resulting to defendant therefrom. Defendant

sufficiently states that, "[r]easonably relying upon the truth of such false statements, the USPTO

did, in fact, grant registration of the CTF Mark to CTF" (Ans. 10). Defendant also explains that

"Hospitality is likely to be damaged by the continued registration of the CTF Mark" because

(*id.* at 7, 10):

> Hospitality has invested a great deal of time and money in
> promoting its business and the professional quality of its services,
> and is continuing to spend substantial amounts of time and money
> in the promotion of its hospitality service. . . . Hospitality has done
> business under the trademark, PENTA HOSPITALITY,
> nationwide since at least January, 2007.

In sum, these final two prongs are sufficiently alleged.

---

[4] As to the other, non-intent elements of the fraud claim, CTF does not explain *why* Hospitality's allegations lack particularity. Defendant has pled with sufficient particularity the time, place, and nature of the alleged fraudulent activities, as explained previously, and has not made mere conclusory allegations of such fraud — this is all that is required to overcome a motion to dismiss.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

Because all required prongs of the fraud claim were sufficiently alleged, plaintiff's motion to dismiss the counterclaim is hereby **DENIED**.

**2.    MOTION TO STRIKE HOSPITALITY'S AFFIRMATIVE DEFENSES 2, 3, 4, 5, 7, 9, AND 11.**

A motion to strike an affirmative defense is brought pursuant to Federal Rule of Civil Procedure 12(f), under which a court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandelous matter." The Ninth Circuit has held that:

> The procedural sufficiency of a pleaded claim or defense in federal court is governed by the federal rules . . . . Fed. R. Civ. P. 8(c) determines whether the pleading of the . . . defense was sufficient . . . The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense.

*Wyshak v. City National Bank*, 607 F.2d 824, 827 (9th Cir. 1979). Moreover, the trial court has discretion to strike material from the pleadings. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). If a claim is stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party. *Wyshak*, 607 F.2d at 826.

**A.    Affirmative Defenses 2, 3, 4, and 7:  Estoppel, Laches, Waiver, and Failure to Mitigate Damages.**

Plaintiff's motion requested that this order strike affirmative defenses 2, 3, 4, and 7. In response, Hospitality withdrew affirmative defenses 2, 3, 4, and 7 (Opp. 8 n.1). Thus, affirmative defenses 2 (estoppel), 3 (laches), 4 (waiver), and 7 (failure to mitigate damages) are hereby **STRICKEN WITH PREJUDICE**.

**B.    Affirmative Defenses 5 and 9:  Unclean Hands And Invalid Trademark.**

Defendant sets forth affirmative defenses 5 and 9 as follows (Ans. 5–6):

**Affirmative Defense No. 5**

All or some of CTF's claims are barred under the doctrine of unclean hands.

\*          \*          \*

**Affirmative Defense No. 9**

All or some of CTF's claims are barred because any marks claimed by CTF, including its registration for PENTA (U.S. Reg. No. 3,568,660), are invalid.

United States District Court

For the Northern District of California

1    Plaintiff's motion points out that defenses pleaded "in perfunctory fashion, without

2    any supporting factual allegations" are insufficient (Br. 8) (emphasis omitted).  Indeed, bare

3    statements reciting mere legal conclusions do not provide a plaintiff with fair notice of the

4    defense asserted, as required under *Wyshak*.  *See*, *e.g.*, *Qarbon.com*, *Inc. v. eHelp Corp.*, 315 F.

5    Supp. 2d 1046, 1049–50 (N.D. Cal. 2004) (Ware, J.) (striking defenses that did no more than

6    name the defenses without listing their elements or supporting facts); *Solis v. Zenith Capital,*

7    *LLC*, No. C-08-4854, 2009 U.S. Dist. LEXIS 43350, at *8–19 (N.D. Cal. May 8, 2009)

8    (Hamilton, J.) (striking affirmative defenses because no factual bases were provided); *Woodfield*

9    *v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) ("[B]aldly 'naming' the broad affirmative defenses

10   of 'accord and satisfaction' and 'waiver and/or release' falls well short of the minimum

11   particulars needed to identify the affirmative defense in question and thus notify [the plaintiff]").

12   This order finds that defenses 5 and 9 were pled in an insufficient manner.  As to defense

13   5, simply stating that a claim fails due to plaintiff's "unclean hands" is not sufficient to notify the

14   plaintiff *what* behavior has allegedly given them "unclean hands."  As to defense 9, simply stating

15   that the trademark is "invalid" is not sufficient to notify the plaintiff *why* the trademark is

16   allegedly invalid.  Plaintiff attempts to interpret what defendant may have meant by stating that

17   "Hospitality's only possible factual basis for these affirmative defenses are those supporting its

18   counterclaim for cancellation" (Br. 8).  That is one possible interpretation.  But the actual bases

19   for these defenses are not stated in the operative pleading, and it is neither this Court's nor

20   plaintiff's responsibility to interpret what defendant *may* have meant by such vague statements.

21   Defendant makes two arguments in opposition to the motion to strike affirmative defenses

22   5 and 9.  *First*, defendant points out that "[m]otions to strike are disfavored and should not be

23   granted unless it is clear that the matter to be stricken could have no possible bearing on the

24   subject matter of the litigation" (Opp. 8).  While this lenient rule applies to affirmative defenses

25   that are sufficiently pleaded, it is inapplicable to affirmative defenses that are mere statements of

26   legal conclusions with no supporting facts.  *See Iqbal*, 129 S. Ct. at 1949–50; *Wyshak*, 607 F.2d at

27   827.  *Second*, defendant claims that CTF "admits" that affirmative defenses 5 and 9 rely on the

28   same facts as the counterclaim (Opp. 9).  This argument is absurd — plaintiff did not, *nor could*

it, "admit" anything about the intended bases of *defendant's* allegations.  Plaintiff, in stating one possible basis, was merely attempting to intelligently respond to an insufficiently stated defense. Under the *Iqbal* standard, the burden is on the *defendant* to proffer sufficient facts and law to support an affirmative defense, and not on the plaintiff to gamble on interpreting an insufficient defense in the manner defendant intended.

Because defendant has not provided "fair notice" to plaintiff regarding affirmative defenses 5 (unclean hands) and 9 (invalid trademark), as required by *Wyshak* and *Iqbal*, these defenses are hereby **STRICKEN** with leave to bring a motion to add better renditions.

### C.      Affirmative Defense 11:  Fraud.

Defendant sets forth affirmative defense 11 as follows (Ans. 6):

**Affirmative Defense No. 11**

> All or some of CTF's claims are barred because CTF committed
> fraud on the U.S. Patent & Trademark Office ("USPTO")
> by misrepresenting its use of the PENTA mark (U.S. Reg.
> No. 3,568,550) in conjunction with all of the services listed in its
> USPTO application for the PENTA mark.

This defense is sufficiently alleged.  It is clear that affirmative defense 11 relies on the same facts as proffered to support the counterclaim.  With the counterclaim's additional supporting facts, this defense provides notice to plaintiff as to why defendant believes CTF's claims are barred.

Because this order has already determined that the counterclaim was sufficiently stated to overcome plaintiff's motion to dismiss, affirmative defense 11 is likewise sufficiently stated to overcome plaintiff's motion to strike.  Accordingly, plaintiff's motion to strike affirmative defense 11 is hereby **DENIED**.

### CONCLUSION

For the reasons stated above, the motion to dismiss the counterclaim is **DENIED**, and the motion to strike affirmative defenses 2, 3, 4, 5, 7, 9, and 11 is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, affirmative defenses 2, 3, 4, and 7 are **STRICKEN WITH PREJUDICE**, and affirmative defenses 5 and 9 are **STRICKEN** with leave to bring a motion to add better renditions. Affirmative defense 11 still stands.

United States District Court

For the Northern District of California

Any motion to amend must be filed and served by **NOVEMBER 12, 2009**, setting forth the new pleading in full and explaining why it would overcome the defects, if allowed.

The hearing scheduled for October 29, 2009, at 2:00 p.m. is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: October 26, 2009.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

13